UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
OSCAR TURNER,                                    :

                           Plaintiff,            :

                    -against-            :          **REPORT AND RECOMMENDATION**

UFCW, LOCAL 888,                                 :          12 Civ. 2648 (AT) (KNF)

                      Defendant.     :
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE ANALISA TORRES, UNITED STATES DISTRICT JUDGE

## BACKGROUND

Oscar Turner ("Turner"), proceeding <u>pro se</u>, commenced this action against Saint Dominic's Home and United Food and Commercial Workers Local 888 ("UFCW"),  alleging unlawful employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, and the New York State Human Rights Law, New York Executive Law §§ 290-301.  UFCW filed an answer.  Saint Dominic's Home made a motion to dismiss, which was granted.  (Docket Entry No. 22).  Before the Court is UFCW's unopposed motion to dismiss the complaint, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

### *Allegations in the Complaint*

In September 2010, Turner reported to Susan Smith ("Smith"), a human resources manager, that Maxine Lewis ("Lewis"), a resident manager, subjected him to oral abuse, by remarking, often, "that all Americans are stupid."  Smith suggested to Turner that he "should transfer to another work site."  In October 2010, an employee, Thomas Sayers ("Sayers"),

threatened to slap Turner's face, while he was talking with Lewis.  Turner reported this incident to Smith, who had the matter investigated.  Lewis reported to the investigator that Turner provoked Sayers, but the investigator never interviewed Turner.

Turner asserted that every performance evaluation he received from Saint Dominic's Home "has been graded poor or failing work performance," and Lewis refused to give him a copy of any of them.  Moreover, Lewis discussed Turner's performance evaluations with him in front of other employees; she did not subject any other employee to such treatment.

In June 2009, Lewis assigned Turner to cooking duties, and he "cooked dinner from that date until March of 2012," notwithstanding that "[a]ll duties are supposed to be shared by each staff member."  According to Turner, in addition to his cooking duties every night, he also shared in other duties, such as "cleaning the consumers, dispensing medicine, recreation with consumers, washing clothes, etc."

On January 24, 2010, Turner's pay check was short one day's pay, and he brought this issue to Lewis's attention.  Lewis said she would investigate the matter.  When Turner did not see any correction on his next pay check, he called Smith, who directed him to contact the payroll department.  Turner was advised by "Carol in payroll" that Lewis had to complete a requisition form to enable Turner to receive his unpaid salary, but Lewis never did that, and he never received the unpaid salary.

In December 2010, Smith conducted confidential interviews with some employees, and she told Turner that she and another person received an anonymous letter alleging that Lewis "discriminates against American employees."  Smith inquired of Turner whether he believed Lewis was fair, or singled out or favored particular employees.  Turner reported to Smith that Lewis discriminated against American employees and, thereafter, Smith never contacted him.

2

When Turner returned to work after his confidential interview with Smith, Lewis asked him if he "was plotting on her." Turner also complained to "the house delegate" Kevin King ("King"), in December 2010, about his problems with Lewis.

Turner alleges that, in January 2011, he was suspended for arriving late to work, but another employee, Isaac Pemph, who arrived to work late regularly on Wednesdays and Thursdays, was not suspended for his tardiness. Similarly, Anthony Coto, who relieved Turner from duty, also arrived to work late "almost every Monday, Tuesday and Wednesday," and "Yaw Boafoe ["Yaw"] also arrives to work late," but "none of these men were suspended for their lateness." Turner maintains that Lewis wrote up Yaw for lateness only after Turner filed a complaint against Saint Dominic's Home with the New York State Division of Human Rights ("NYSDHR").

When Turner was suspended in January 2011, he informed King, who directed Turner to call UFCW. Turner contacted UFCW, leaving several messages for UFCW's representative. He received no response from UFCW. Turner also sent a letter to UFCW's president, Max Bruny, but received no response. Subsequently, Turner met with a UFCW representative to discuss his suspension from work and Lewis's treatment of him. Although he was told at that meeting that UFCW would contact Lewis's supervisor to discuss the matter and that Turner would be informed about the outcome, by May 31, 2011, Turner did not hear from UFCW.

Turner alleges that, after he filed the complaint with NYSDHR, from June 2009 until June 2011, he was assigned two consumers who wore "adult diapers, because no one else wanted to deal with them, even though they are on different floors," which was against Saint Dominic's Home's policy, since "each staff member should be assigned to one bedroom each."

On September 19, 2011, Sharon Latimer wrote up Turner for arriving to work late, but

she did not write up another employee, who arrived late every night to relieve Turner of his duty. In January 2012, one of the consumers passed away.  Lewis told a person identified only as "'Kanisha' that it was [Turner's] fault," and "Kanisha has taken every opportunity she can find to make discriminating remarks about Americans."

On March 13, 2012, Turner was suspended from work and advised that he could not return until he completes his annual physical examination.   When Turner contacted UFCW concerning this, he was told that UFCW could not help him, "because this was a Human Resources problem."  Turner completed the examination on March 14 and returned to work on March 17, 2012.  According to Turner, other employees did not complete their physical examinations timely, but he was the only employee who was singled out and suspended.

Attached to Turner's complaint are two exhibits: (i) the January 24, 2012 United States Equal Employment Opportunity Commission ("EEOC") Dismissal and Notice of Rights form, indicating that it "has adopted the findings of the state or local fair employment practices agency that investigated this charge"; and (ii) the May 27, 2011 United States of America National Labor Relations Board ["NLRB"] Charge Against Labor Organization or Its Agents, filed by Turner, contending that UFCW "failed and refused to process the grievances of Oscar Turner regarding his suspension, his pay, and the treatment he receives from his managers for arbitrary and capricious reasons."

***UFCW's Contentions***

UFCW contends that Turner "failed to plead that he filed a Charge against [UFCW] with EEOC alleging violations of Title VII," and the EEOC's "issuance of a right to sue letter to the

Plaintiff on February 18, 2011[1] does *not* include the Union.  Rather, the EEOC's right to sue letter exclusively names Plaintiff's employer St Dominic's Home."  According to UFCW, since "the EEOC's right to sue letter against St Dominic's Home does *not* provide the Plaintiff with the right to sue Local 888, a separate and distinct entity," the plaintiff failed to state a claim upon which relief can be granted.

UFCW asserts that, in his complaint, Turner alleged only that he complained to UFCW about his treatment by St Dominic's Home and that UFCW failed to address his complaints, but he did not allege that UFCW's actions or "alleged inactions" were motivated by bias.  UFCW contends that the charge the plaintiff filed with the NLRB, in which "he alleged incidents similar to the ones contained in his federal lawsuit as being a violation of the National Labor Relations Act," was dismissed by the NLRB, and his appeal from that dismissal was denied.  UFCW maintains that the court should not hear any claim under the state human rights law if the Title VII claim is dismissed.

## DISCUSSION

***Rule 12(d) Result of Presenting Matters Outside the Pleadings***

If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).

Converting a motion filed under Fed. R. Civ. P. 12(c) into one seeking summary judgment, pursuant to Rule 12(d), is discretionary.  See Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639,

---

[1] UFCW refers to its Exhibit C in connection with the EEOC letter; thus, the date of the EEOC letter appears to be erroneously stated as "February 18, 2011."  The EEOC letter contained in Exhibit C and attached to the complaint is dated January 24, 2012.

642 (2d Cir. 1988). "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (internal citations omitted).

In support of its motion to dismiss, UFCW submitted various exhibits: (1) Exhibit A, the plaintiff's NYSDHR complaint, filed on May 20, 2011, Case No. 10148862; (2) Exhibit B, the December 1, 2011 "Determination and Order After Investigation" by NYSDHR, Case No. 10148862; (3) Exhibit C, the EEOC's January 24, 2012, Dismissal and Notice of Rights form; (4) Exhibit D, the complaint in this action; and (5) Exhibit E, NLRB's August 15, 2011 letter to Turner, denying his charge that UFCW breached its duty to him of fair representation, and the October 17, 2011 letter to Turner, denying his appeal from the NLRB's August 15, 2011 determination.

The following UFCW exhibits are not matters outside the pleadings: (a) Exhibit D is the complaint in this action; (b) Exhibit C is the January 24, 2012 EEOC Dismissal and Notice of Rights form, which is attached as an exhibit to the complaint; and (c) Exhibit A is the plaintiff's NYSDHR complaint, incorporated by reference in the complaint in this action. However, Exhibit B, the December 1, 2011 "Determination and Order After Investigation from the New York State Division of Human Rights," is not expressly cited in the complaint, and it is not integral to the allegations in the complaint, because Turner attached the EEOC's Dismissal and Notice of Rights form to his complaint, which serves as corroboration for an allegation in the complaint that Turner satisfied a precondition to bringing a Title VII action. See Francis v. City of New York, 235 F.3d 763, 768-69 (2d Cir. 2000) (exhausting administrative remedies is a precondition to bringing a Title VII claim in federal court). Therefore, Exhibit B, the December

1, 2011 "Determination and Order After Investigation from the New York State Division of Human Rights," is a matter outside the pleadings.  Similarly, Exhibit E, the NLRB's August 15, 2011 denial of Turner's charge and the October 17, 2011 denial of his appeal are also matters outside the pleadings, because they are not cited or referenced in the complaint and not integral to the allegations in the complaint.

Although UFCW provided Local Civil Rule 12.1 notice to Turner, informing the <u>pro se</u> litigant who opposes a Rule 12 motion supported by matters outside the pleadings that the Court may treat the motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, Turner failed to oppose the motion.  That Turner is proceeding <u>pro se</u> and, despite being served with Local Civil Rule 12.1 notice, failed to oppose the motion, gives pause to the Court and cautions the Court not to exercise its discretion to convert this Rule 12(c) motion to dismiss into a Rule 56 motion for summary judgment.  Therefore, the Court will not treat the instant Rule 12(c) motion as a Rule 56 motion and will not consider matters outside the pleadings, as explained above, or any factual or legal assertions that are based on matters outside the pleadings.

### *Rule 12(c)*

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "[T]he standards for dismissal pursuant to Rule 12(c) are the same as for a dismissal pursuant to Rule 12(b)(6)."  <u>Ideal Steel Supply Corp. v. Anza</u>, 652 F.3d 310, 324 (2d Cir. 2011).  In considering a motion to dismiss, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  <u>See</u> <u>Faber v. Metro. Life Ins. Co.</u>, 648 F.3d 98, 104 (2d Cir. 2011).  Where the plaintiff is a <u>pro se</u> litigant a court is duty bound to "read the pleadings . . . liberally and

interpret them to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999)(citations omitted)

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003). Since failure to exhaust administrative remedies is not jurisdictional, claims not asserted before the EEOC may still be considered "if they are reasonably related to those that were filed with the agency." Id. "Moreover, exhaustion of administrative remedies is not required if adequate remedies are not reasonably available." Fernandez v. Chertoff, 471 F.3d 45, 58 (2d Cir. 2006). "A claim is considered reasonably related if[: (1)] the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge," Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001) (quotation marks and citation omitted); (2) a claim alleges retaliation by an employer for an employee's filing of an EEOC charge; and (3) a claim "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." Deravin, 335 F.3d at 201 n.3 (citation omitted). "In determining whether claims are reasonably related, the focus should be on the factual allegations made in the EEOC charge itself, describing discriminatory conduct about which a plaintiff is grieving." Id., 335 F.3d at 201 (quotation marks, alteration and citation omitted).

Turner's May 20, 2011 complaint filed with NYSDHR names Saint Dominic's Home and does not name UFCW. In that complaint, Turner alleged he is an African American who is being discriminated against based on his race and national origin. He asserted that he received poor job evaluations and was assigned to work in the back yard, which was not in his job description. According to his NYSDHR complaint, Turner's duties were different from those of other staff,

and his manager talked to other staff about him and remarked often that "Americans are stupid." Turner alleged he was denied time off, suspended from work for three days for being minutes late, while an employee who is twenty minutes late twice weekly was not suspended. Turner asserted that he "reported this to the union" and wrote a letter to UFCW but received no response.

Turner failed to exhaust administrative remedies against UFCW because he did not name UFCW in his May 20, 2011 NYSDHR complaint or file a charge against it with EEOC. No reason exists to believe that administrative remedies were not available to Turner in connection with his grievances against UFCW, since Turner filed a charge against Saint Dominic's Home and could have named UFCW in that complaint or filed a separate charge against UFCW, if he wished to do so.

Turner's claim against UFCW is not reasonably related to the conduct complained of in his May 20, 2011 charge with NYSDHR against Saint Dominic's Home because it would not fall within the scope of the EEOC investigation which can reasonably be expected to grow out of that charge. Turner's May 20, 2011 NYSDHR charge asserted that his employer, Saint Dominic's Home, discriminated against him based on race and national origin because it treated him differently from other employees by: (1) giving him poor evaluations; (2) assigning him more work than others; (3) not permitting him to take time off; and (4) disciplining him for lateness. The NYSDHR complaint does not allege any acts on the part of UFCW. The only allegation concerning UFCW in his May 20, 2011 NYSDHR complaint is that, when he reported his complaints about Saint Dominic's Home to UFCW, UFCW failed to respond. Without more, it is unreasonable to expect that the scope of the EEOC investigation into Turner's discrimination complaint against Saint Dominic's Home would include Turner's claim against UFCW, since no allegation of discriminatory conduct by UFCW was made in the NYSDHR charge.

Moreover, Turner's claim against UFCW is not a claim alleging retaliation by an employer for an employee's filing of an EEOC charge, since UFCW is not his employer and no allegation was made that UFCW retaliated against Turner, or that any incidents or further incidents of discrimination were carried out by UFCW in the same manner alleged in the EEOC charge. Accordingly, Turner's Title VII claim against UFCW is not reasonably related to his claim against Saint Dominic's Home.

Turner failed to exhaust his administrative remedies in connection with his claim against UFCW. Given that Turner failed to exhaust his administrative remedies concerning his Title VII claim against UFCW, exercising jurisdiction over Turner's state claims is not warranted.

## RECOMMENDATION

For the foregoing reasons, I recommend that UFCW's motion, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Docket Entry No. 34, be granted.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Analisa Torres, 500 Pearl Street, Room 720, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Torres. ***Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude***

*appellate review.*  See <u>Thomas v. Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985); <u>Cephas v. Nash</u>, 328

F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York                    Respectfully submitted,
        September 17, 2013

                                    Kevin Nathaniel Fox
                                    KEVIN NATHANIEL FOX
                                    UNITED STATES MAGISTRATE JUDGE